Good morning. If it pleases the Court, Michael Premis, on behalf of Jordan Marie Saldana, the appellant and the debtor, I would like to reserve three minutes of my time for rebuttal. Having said that, this case raises some issues that are brewing across the country, but they don't need to be. This case raises a question of statutory interpretation. What I'm asking this panel to do is to side with the majority view of courts on this issue, is to adopt the view of the only circuit court, the Sixth Circuit, to look at the issue of interpreting voluntary retirement contributions. What I'm asking this court to do is to take a look at the official forms. The official forms for bankruptcy also contemplate the interpretation that I am urging the court to take as to the hanging paragraph. That is the official forms, Form 1. But those are forms that are promulgated by the judicial conference. Do you have a case that says that forms promulgated by the conference can be considered in statutory interpretation? They're not. I agree with you on that. Ideally, the forms would reflect the law, and we'd like not to have them be in conflict. Also, this law has been in effect for 20 years, and it seems like for almost 20 years courts have disagreed as to whether in enacting what they call the hanging paragraph, Congress intended to exclude or include post-petition voluntary retirement contributions from the debtor's disposable income. So Congress could — Congress has had 20 years to say something and knows that we're all suffering from the hanging paragraph and hasn't done anything. So — Well, unfortunately, that's common with Congress, and we're left to sort this out. So why do you think the proper interpretation of the hanging paragraph compels the conclusion that post-petition voluntary retirement contributions are excluded from the debtor's disposable income? It seems to me that there's a good argument. I mean, our BAP has said they're not excluded, right? Correct. All right. We just don't have a — we don't have the circuit. The circuit court has not ruled on this issue. That is correct. The BAP — So we can overrule the BAP if we want, or we can say that the BAP is right, and then there would be a conflict depending on what — there could be a conflict with the Sixth Circuit, or it could be the same, right? Well, the Sixth Circuit has endorsed the debtor deducting voluntary retirement contributions. So if this panel were to adopt the BAP's take on it, that would be a circuit split with the Sixth Circuit. But if you sort of think of bankruptcy law, that obviously in this — this is a Chapter 13, right? Correct. This is a Chapter 13. And so if you do a Chapter 13, you get — correct me if I'm wrong, but that the debtor gets to set a schedule for paying off the debts, but it's less than what the debtor owes, and at the end of that period of time, then the debtor's done, right? That is correct, yeah. Okay, so if the debtor puts a whole lot of money into the voluntary contributions to their retirement, that's money that doesn't go to the people that the debtor owes money to, right? The debtor's already getting a break, and then it can put money — set it aside to for him or herself, and then the people the debtor owes money to get even less. Why would that be a good policy under bankruptcy? Well, that's the conflict between debtors and creditors, is how to sort these things out and what Congress has drawn as a line in terms of a debtor's ability to pay and what would represent disposable income or projected disposable income. But you're correct, the more that goes into retirement is the less that would be available to repay other creditors, but that's the tension of a zero-sum game when there's limited resources. But I think — And under 13, the debtor's already going to pay less than the debtor owes, right? Not necessarily. In many cases, yes, but the debtor's expected to pay based on their perceived ability to pay, which may be 100 percent of their debts, but in many cases it's not. So when Congress passed this law in 2005, the BAP CPA, as I understand from the briefing, the consensus was that this — that the voluntary contributions were disposable income, and your argument in the brief is that presumably Congress wanted to change that and give substantive effect to that change by excluding that, and that's what's reflected in the hanging paragraph, that these voluntary contributions shall not constitute disposable income as defined in Section 1325 — sorry, 1325b2. So here's my question. There's a third theory out there, just to complicate matters further from this Johnson bankruptcy decision, that takes that language at face value and says, regardless of whether someone was contributing before or after the petition was filed, that's not part of disposable income. Why isn't that the correct interpretation of this? Well, to look at this, I don't see in the statute a temporal requirement, a time requirement, a requirement that the debtor have to have been contributing prior to the filing of a bankruptcy, although on the facts of this case, the debtor has been, so this panel wouldn't need to reach that specific issue, but I don't see any requirement about preexisting contributions in the statute itself. I do see the statute clearly contemplating 1325b2, as Your Honor had referenced, and the intention that this would be limited to Chapter 13 and not to other chapters. So to address some of the concerns that Your Honor had also raised, would this be something where someone would qualify for Chapter 7 just by virtue of maxing out their retirement contributions? The answer would be no, that this is limited to Chapter 13. And the good faith exception, right? Correct. I mean, there has to, there's a, if the plan isn't proposing good faith, and one could say if you're maximizing your post-petition contributions, it might not be, then it would not be confirmed, correct? That's correct. Good faith is required as an overlapping policy to Chapter, well, to all bankruptcies, but that's not what we're discussing here. What do you make of the trustee's argument that the Internal Revenue Manual has some bearing here because Congress was referencing that perhaps in the, in adopting the amendments, and that the manual goes the other direction? You know, the Internal Revenue Manual is something where this court has addressed it as a source to consider, but it, the IRS is not going to write federal law. The Internal Revenue Manual, the IRS is free to change from time to time for their own reasons, but that doesn't rewrite the bankruptcy laws as they were written in 2005 or what we're talking about here. So I think it can have some, be something we'd take a look at, but it's not going to guide the outcome here. And I also know that it's routinely disregarded in some court cases or some other matters. Well, it seems like it's just trying to give, it just isn't easy to interpret this. Any, any of the three choices that we have kind of don't fit neatly into statutory construction. Congress doesn't want to do anything about it. So what would get the Supreme Court's attention in this matter? A split in the circuit? I think it would, yeah. That's not the, that's... Well, we have to get the, we have to get the best answer that we can get. But would you at least concede that this has been causing havoc in bankruptcy courts for some time? Oh, I certainly would concede that, yes. It's been very problematic and it's been nearly 20 years. Which of the three is the majority rule? Maybe it's a split decision, but is there one? I think the Sixth Circuit in Davis said that the Johnson rule was the one that more courts have adopted, but that may have been some time ago. Is there any sense of, is there a consensus of any kind? Yeah. The majority of courts, and the trustee acknowledges this in her brief, would allow voluntary withholdings as a deduction to ability to pay through the means test. Now, there's a split about whether the withholdings have to have occurred prior to the filing of the bankruptcy or that they could commence after the filing of the bankruptcy. But again, that's not an issue in this case because the debtor was actually contributing prior to the filing. But that is the majority view. And that's also the view taken by the leading treatise, which is Collier's. So we've got a lot of authority to support the position that I'm urging this panel to take. The Sixth Circuit in Davis, the official forms take that position, as well as the leading treatise, Collier's on bankruptcy, all take the position that these retirement deductions should be allowed as a deduction in ability to pay. I can't address my thought on the hanging paragraph. And the truth of the matter, I think, is that it was inserted hastily. The fact that it's a hanging paragraph and not part of the statutory hierarchy, it doesn't have a Roman numeral or a letter in front of it, speaks to the idea that it was inserted hastily and likely back in 2005 by somebody that knew far less about how this was going to play out than the people who were actually working with it. I don't think there's much doubt that Congress made a hash of it in 2005. But here we are. Well, we agree on that. I think they got enough hands in the air for it to pass and said, let the courts take it from there. And here we are taking it from there. But I do think there's enough here. But aren't we kind of faced with a situation, at least, the majority of courts seem to favor your approach or the Johnson approach outside the Ninth Circuit. Correct. But most of the courts within the Ninth Circuit follow the Prigge approach. And that's kind of where we are, right? That is kind of where we are. Yeah. That is kind of where we are. But I do think there's plenty of authority that would allow this panel to adopt the approach that I'm urging. And I've covered that a couple of times, but I think there's an awful lot of authority. I don't think we'd want to make the official forms incorrect without taking that step very seriously. Not that they are law, but they should be taken very seriously, lest it confuse pro se litigants and others. As well as the — Well, the Sixth Circuit, too, the Davis case that you're urging us to follow, also did have a dissent that would be closer to the Prigge approach, too. So it was — it obviously was a 2-1 decision. So it pretty much lays out our choice again there, right? I agree. Yeah. But — Do you want to save the balance of your time for rebuttal? Why don't I do that? Thank you. Thank you. Good morning. Good morning. May it please the Court. My name is Brent Meyer, and I represent Martha G. Berninsky, Chapter 13 trustee and appellee in this matter. This appeal asks a very straightforward question. Are voluntary contributions to 401K retirement accounts considered in the calculation of current — or disposable income? Although this — although this question is straightforward, it is extraordinarily complicated to answer. Bankruptcy, as this panel has identified, courts across the country have adopted four different approaches to answering this question. The Sixth Circuit — So should we do a fifth approach, or what are you saying? That could be an acceptable option. I'm just not certain what a fifth approach would be. I think we could do that. We could, and that would be an interesting approach of how we take that. The question becomes, what do we look to and what has not been discussed in the four different approaches? If I might cut to the chase a bit, the problem I have with the Prigge approach is, in terms of statutory interpretation, is that it really makes the amendments in 2005 meaningless. I don't see any meaning that can be attached to the additional language that would have any substantive effect. Understood, Your Honor. And I think that you've correctly identified that that is one of — if you take a look at the two — the majority of the cases have indicated that Johnson is the majority view. However, if we look at it, the Sixth Circuit is the only circuit case that has decided the issue twice. They can't get it — they can't have a consistent view there. The dissent points this out, that the majority — Right. I'm kind of ignoring all the surplus right now. I'm just saying, as a matter of statutory interpretation, which is — you know, that's in front of us now. That's my concern with the Prigge approach, is that it means Congress engaged in essentially a meaningless act in adding these words. Right. So I'm asking you to tell me why I'm wrong. Okay. And I think what we start out with, as we look at one of the first cases to decide this in the Ninth Circuit, was the lower court of McCulloch. That was Judge Carlson in the Northern District of California. Right. What he said in there is that the hanging paragraph, it was aimed at — a modest aim at only limiting pre-petition contributions from ever being considered as local government. But they were excluded. But he said everybody agreed that pre-petition contributions were excluded from property of the estate. Correct. But he said — So why would Congress have to correct that? Because everybody agreed on it then. Well, pre-petition contributions, those were not property of the estate. Correct. Because if we look at the res of the account, that account was never property of the state. And we look at 541C2 and Patterson v. Shoemake, we knew that those amounts were not property of the estate. The question, though, goes as — and this is to answer your question, is if this res, this pre-petition res that everyone acknowledges as 541C2 excluded, what happens if you got distributions from that? Would that ever be considered current monthly income for purposes of disposable income? Well — Right. But that — you're dealing with Chapter 5, and that was just strictly property of the estate. But go ahead, please. Correct. Right. But this is the tension with it being held in Chapter 5, is we look — the first part of 541B7 analyzes what is not property of the estate. It's always assets. But the hanging paragraph starts with, except that, and it tries to link disposable income. Well, the tension that we have with this paragraph is we have assets at the first part, and we have an exclusion for income. So the question is, where is that income going to — where could that income ever be considered disposable income? And the answer to — to answer your question is, it is addressed potentially to the idea that pre-petition res or pre-petition amounts in a retirement account, if those are ever distributed to the debtor, that would be the income that would be excluded under CMI. CMI is current monthly income, is defined in 10110A, and 1325B2 adds to that. There are eight exclusions from current monthly income. The interpretation that I would argue that is potentially added or identifying as to the exclusion under the hanging paragraph is solely those contributions that a debtor may receive, either within the six-month period or post-petition, that come out of the res that we know is not property of the estate. I don't see any concern that was raised before the 2005 amendments that makes that argument that they were going to be excluded distributions. I mean, what the people were concerned about was, do you — can you exclude that from — exclude these voluntary payments themselves from disposable income in Chapter 13? Correct. Because you would agree that pre-2005, the so-called Prigge rule was the majority rule in the courts. In other words, they were — it was considered — they were not considered disposable income. Correct, Your Honor, but the distinction we have with the 2005 BAPSIPA amendments was that it defined this entire new universe for calculating disposable income, which is the means test, which takes the 1325B2. And so to try to analyze pre-BAPSIPA 2005 and say, what did the majority say or how would the majority exclude pre-petition versus post-petition, that whole discussion never came into the universe of deciding disposable income. So what was Congress doing, since we know that the words don't make it clear? What was Congress doing? What I believe Congress was doing was simply making the observation that if any amounts in — well, if you look at footnote 5 in Prigg, what Prigg identified was — I think it's Prigge. — Prigge. I've called it twice. Either way, I just — It's a Montana case. Okay. I've been wondering how to pronounce that all day. So, Judge Kirshner, what he — what I believe that he treasured is 541C2. As I previously said, we've always identified that those amounts are never going to be property of the estate. Well, if you look at 541B7, it narrowly talks about those amounts that are withheld from the employer. Well, footnote 5 in Prigg — Prigge says that we have amounts that are in the trust account that we know are the debtors, not property of the estate, and then we have amounts that are withheld by the employer that have not yet been distributed to the trust. These two amounts now are not property of the estate. The except that language just tried to clarify that that would never — those amounts that the employer is holding never would be considered disposable income under any circumstance. It was just reinforcing the idea that those amounts would never be considered in the disposable income calculation. But if I understand your argument, the distribution by the employer would occur at retirement, correct? That's not my understanding. The employer distribution would be amounts withheld that on the normal cycle would then be remitted to the trust. Because what happens is the employer takes gross wages — Right. — they deduct certain amounts or the debtor voluntarily contributes certain amounts. The employer or their payroll processing department holds those amounts and at certain intervals will then distribute those amounts to the — To the trust, but not to the debtor. Not to the debtor under that circumstance. Right. So, I mean, under your logic, how could the debtor ever get that income that would be considered disposable because that would not occur until retirement? That is answering the question of Prigge of whether or not — what was Congress trying to do with 541c2 and 541b7. The other explanation for this, and you'll see this in the dissent in Davis, is the court identified at least four instances where those amounts could be considered current monthly income and one of them were distribution. So if you reject my analysis on the 541c2 and 541b7, then what we're left with is, well, how do these amounts ever become distributed to the debtor? Well, that really then takes 541c2 and 541b7 and combines them together. It just reinforces that all pre-petition amounts are never property of the estate. Well, we know how the debtor could get distributions from that. They have early retirement. They have mandatory distributions from that. So under that scenario, the — the dissent in Johnson — or in Davis points out that those amounts would then be distributed to the debtor, and what 541b7 was simply trying to do was add another element to 10110a and 1325b2 and to remove from the calculation of current monthly income those distributions. Because what is difficult to — to understand is every court that's addressed this issue takes this as a deduction or an expense. But disposable income is a concept of current monthly income and allowed expenses. It doesn't have to be an expense, because when you try to put an expense into this paragraph, it doesn't make sense, right? Because it's talking about monies withheld. How is that an expense? My interpretation would limit the — accept that hanging paragraph and say that if from the res, the trust res, the debtor ever gets a distribution, that amount is not current monthly income, and therefore that amount is not considered in the disposable income calculation. That logically gives an explanation for how the hanging paragraph is not dead law, as the Sixth Circuit tried to say when you try to use the — Yeah. I mean, I think the difficulty — and maybe you can correct me — is that you've raised these scenarios, but I just haven't ever seen it being a big deal in bankruptcy, in Chapter 13 bankruptcies. What is a big deal is whether the contributions to the employer-managed pension plan are disposable income. I mean, courts have — there have been a lot of litigation on that, even pre-2005, but I just — maybe you can correct me, but I just haven't seen much litigation on the issues you're describing that would cause Congress to go, whoa, we need to correct this. I agree. It's theoretical. I agree, Your Honor. And the interpretation, although it may not make perfect sense and it may not take a universe where you go, that was a real problem that Congress needed to address, but then you look at the flip side of it, and as this Court pointed out earlier, the overwhelming majority of the courts, other than the Ninth Circuit pre-Bapst Zipa, said that disposable — or voluntary contributions are part of a disposable income calculation. So it is very difficult to believe that a paragraph, a hanging paragraph, which all of us agree is poorly written, inartful at best, would that take out certain contributions to 401K voluntarily, out of the entire equation for disposable income, where we never thought — where Congress never thought that was the answer prior to Bapst Zipa. And that idea is reinforced when you look at the expenses for above-median income debtors. We reference 707B. But don't you — aren't you — I mean, you have — in order to accept that reading, you would have to overlook just the plain language of the hanging paragraph and say it can't possibly have this big effect, even though it says exactly what it says, because why would you hide an elephant in a mouse hole? So what — you know, how would you answer that? Correct. And so for this Court to accept an interpretation consistent with Johnson, you have to eliminate the first four words of the hanging paragraph. I probably would concede that I would lose if those first four words were not there. Well, I mean, I guess the Davis — the Davis majority, I guess, finds a way to say accept that in other — in other instances could mean and also. You know, I mean, as Judge Callahan said, there is — there is no version of interpreting this statute that — that hits every mark. But I guess in some ways, wouldn't it be better for us to take a look at the part of the language that says shall not constitute disposable income, except reading so much into accept that? Well, but it's not just accept that, Your Honor. It's accept that in such amount. Such amount has to refer to something. Such amount has — if the debtor never contributed prepetition, that such amount in 541b7 would be meaningless then, because Johnson gives the debtor the ability to take those deductions, although they never made them prepetition. So that — or such amount has to have meaning. And then except — Well, what about higher up on b7 that says property of the state does not include any amount withheld, and such amount could relate to the any amount? Okay. But if that any amount is zero, that such amount is also zero. So under the Johnson approach, the debtor gets the full amount under the applicable plan document, although any amount was never withheld, and such amount is also zero. So if we have zero and we have zero, how would you ever get an amount where the debtor gets the full amount under the plan? That is the problem with the Johnson logic, is it doesn't statutorily make sense with 541, because such amount has meaning. As for except that, except that, if you want to take — and the Sixth Circuit in Davis does articulate this, is except that has to mean and. That strains the English language to have except that, which tries to understand or make a meaning, and McCullers points this out, that except that has to counteract or have some other meaning. Davis required — Davis, the Sixth Circuit would have this mean and. I think it is incredibly difficult to find that except that is synonymous with and. That is a problem. I've got one minute left, and I would like to make two couple observations here. With Johnson and Davis, which I'll categorize, they take the three approaches other than the Prigge approach. Any amount, such amount, all of the amounts in 541B7, we have to take that amount, and we have to boil that amount down into an amount on the means test for which the debtor would be entitled to some exclusion. As McCullers points out, there's absolutely no mechanism in 541, 1325B, or otherwise that would take any amount, such amount, and then transform it into a monthly amount. If Congress truly intended for the debtor to take, under the Davis approach, only such amount that they contributed on a monthly basis, it would have said that, or it would have said some meaning which would allow us to extrapolate an amount for which the debtor gets to exclude on a monthly basis. What we have here, and to answer the Court's question as initially, is in this scenario, what we see here is if the debtor got to contribute $400 or the maximum amount to their retirement account as requested in the original means test, it left over approximately $400 a month. 1325B requires the debtor, as above median income, to contribute that amount for 60 months to general unsecured creditors. That dividend would be an additional $24,000 to general unsecured creditors. We can take this hypothetical to absurd results, but on certain high income earning individuals, they could have an amount in the thousands of dollars a month that would be excluded. When you extrapolate that out over 60 months, unsecured creditors are getting, would not receive significant in the hundreds of thousands of dollars if this Court would allow those deductions for voluntary retirement account, which the statute never contemplated extrapolation. You don't think that good faith consideration could protect against, you know, gamesmanship of that kind? I don't believe that good faith would be, because the argument is that it's never bad faith for the debtor to do what the Code authorizes, and if the means test would allow such deduction or non-deduction, then I don't believe that the good faith determination would overrule that outcome. Thank you for your argument. Thank you, Your Honor. Thank you again, Your Honors. Michael Premis. Just a brief rebuttal. I think we should take a big step back and recognize that the BAPSIPA Bankruptcy Reform Act was intended to be a complete overhaul of the way things were done and the way ability to pay was determined in bankruptcy. So when we talk about pre-BAPSIPA and the way things were done, this was intended to change things in a radical way, and by doing it, albeit awkwardly in the hanging paragraph, Congress has prioritized retirement contributions. The amicus brief lays out in some detail that retirement savings across this country is dwindling and it's a problem that is coming in our society and has been for decades. So your policy argument would be basically that Congress wants people to be able to retire and take care of themselves, so that doesn't really defeat the bankruptcy process. Correct. That I think Congress wants people to be allowed. I figure it's going to cost them more on the other end if people can't take care of themselves retirement-wise. I can't say what Congress figures, but that would be one thought process. I thought the argument was that with the Bankruptcy Abuse Act in 2005, that Congress was trying to encourage people to file Chapter 13s and not 7s. That was one big-picture idea, and specific. And therefore encouraging, saying, all right, we'll allow you to keep this retirement income because that will encourage you to file a 13 because otherwise you file a 7 and nobody gets that. Correct. And the hanging paragraph expressly references 1325 and the concept of disposable income. Mr. Meyer had talked quite a bit about property of the estate, but disposable income is exclusively a post-petition, post-bankruptcy concept. So I think that the times when there'd be this race of money that's supposed to be going from the employer to the retirement company is a very narrow circumstance that would come up infrequently, if at all. And Congress really wasn't looking at that as, here's this narrow, big problem that needs to be addressed. It was a bigger picture, a complete overhaul that was designed to impact every case, not some narrow circumstance that almost never happens. So how do you explain the accept such amount? I think the accept such amount is designed to say, this is for Chapter 13, that what we're talking about with these retirement contributions would not be a vehicle to qualify for Chapter 7 or used in other chapters. Now, 541, as Your Honor had pointed out, is part of Chapter 5, which is applicable to all bankruptcies, that what we're trying to do here is narrow this and say this really only applies to Chapter 13. Does that make sense? To the best we can. As much as any of this makes sense, I guess. Well, thank you. I think that's the extent of my time. I appreciate your time, Your Honors. Well, thank you both, counsel, for your very helpful argument in this case. And the Court truly appreciates it. And to the students, I'm not sure that you convinced any students that they want to be bankruptcy lawyers at this point in time. However, in my experience, people that do bankruptcy work really enjoy the work that they do. And can you both say that? Absolutely. All right. And thank you for assisting the Court in this matter. The matter will stand submitted.
judges: THOMAS, CALLAHAN, SANCHEZ